**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| LORRAINE & LEO KUBINSKI, as co-Personal Representatives to the ESTATE OF RICHARD PAUL KUBINSKI, on behalf of the Estate and individually,<br><br>      Plaintiffs,<br><br>v.<br><br>JOSEPH EDWARDS, in his official capacity as Warden of the Florida Department of Corrections Lake Butler Reception and Medical Center, RODNEY PRINCE, in his individual and official capacities as Warden of the Volusia County Branch Jail and Volusia County Correctional Facility, MARK FLOWERS in his individual and official capacity as Corrections Director of the Volusia County Correctional Facility, MICHAEL CHITWOOD, in his official capacity as Volusia County Sheriff, ARMOR CORRECTIONAL HEALTH SERVICES, INC., a Florida corporation, FLORIDA DEPARTMENT OF CORRECTIONS, an agency of the State of Florida, VOLUSIA COUNTY DIVISION OF CORRECTIONS, an agency of the County of Volusia, LAKE BUTLER RECEPTION AND MEDICAL CENTER, VOLUSIA COUNTY BRANCH JAIL, VOLUSIA COUNTY CORRECTIONAL FACILITY, JOHN DOES #1-10, and JOHN DOES #11-20, in their individual capacities,<br><br>      Defendants. | CASE NO.: 3:21-cv-34-HES-MCR |

## SECOND AMENDED COMPLAINT WITH JURY DEMAND

Plaintiffs, LORRAINE KUBINSKI and LEO KUBINSKI, individuals residing at 18 Curry

Court, City of Palm Coast, County of Flagler, State of Florida, as co-Personal Representatives to

1

the ESTATE OF RICHARD PAUL KUBINSKI, their son, on behalf of the Estate and individually (hereinafter collectively, the "Plaintiffs"), by way of Complaint against the Defendants, JOSEPH EDWARDS, in his official capacity as Warden of the Florida Department of Corrections Lake Butler Reception and Medical Center, RODNEY PRINCE, in his individual and official capacities as Warden of the Volusia County Branch Jail and Volusia County Correctional Facility, MARK FLOWERS in his individual and official capacity as Corrections Director of the Volusia County Correctional Facility, MICHAEL CHITWOOD, in is official capacity as Volusia County Sheriff, ARMOR CORRECTIONAL HEALTH SERVICES, INC., a Florida corporation, FLORIDA DEPARTMENT OF CORRECTIONS, an agency of the State of Florida, VOLUSIA COUNTY DIVISION OF CORRECTIONS, an agency of the County of Volusia, LAKE BUTLER RECEPTION AND MEDICAL CENTER, VOLUSIA COUNTY BRANCH JAIL, VOLUSIA COUNTY CORRECTIONAL FACILITY, JOHN DOES #1-10, and JOHN DOES #11-20, in their individual capacities (hereinafter collectively, the "Defendants"), by and through their undersigned counsel, do hereby state as follows:

## INTRODUCTION

1.     This is an action for compensatory and punitive damages alleging that the Defendants, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly, willfully, and with deliberate indifference refused to properly treat, give aid, or ensure medical care was given to Richard Paul Kubinski, who later died due to what should have been a treatable illness.

2.     Richard Paul Kubinski (hereinafter, "Richard"), a 51-year-old male, suffering from Zollinger-Ellison Syndrome and its related sequelae, died in the custody of the Florida Department of Corrections (hereinafter, "FDOC") on November 3, 2018, while an inmate in the FDOC's Lake

Butler Reception and Medical Center (hereinafter, "RMC") state prison, located at 8183 SW 152nd Loop, in Lake Butler, Florida.

3.     Prior to Richard's incarceration in RMC prison and following his initial arrest on October 9, 2017, he was held in the Volusia County Branch Jail (hereinafter, "VCBJ"), located at 1300 Red John Drive, in Daytona Beach, Florida, and operated by the Volusia County Division of Corrections (hereinafter, "VCDOC").

4.     Per Richard's "Certification of Death," attached hereto as **<u>Exhibit "A"</u>**, the cause of Richard's death was listed as, "complications of septic shock," and "abdominal abscess," secondary to the significant contributing conditions of "Zollinger-Ellison Syndrome" and "recurrent gastrointestinal hemorrhage".

5.     The Defendants had actual, constructive, or imputed knowledge of Richard's gastrointestinal medical condition, yet on multiple occasions, the Defendants ignored the obvious fact that Richard was in severe gastrointestinal distress and knowingly and willfully acted with extreme negligence, and deliberate indifference by refusing to provide him with the medical care he so urgently needed, and this was the direct and/or proximate cause of Richard's death.

6.     Consequently, Richard's untimely death on November 3, 2018 was a direct result of the deliberate indifference of the Defendants to his medical needs.

**<u>PARTIES</u>**

**<u>Plaintiffs</u>**

7.     Plaintiffs, Lorraine Kubinski and Leo Kubinski, are the parents of the decedent, Richard Paul Kubinski, who, at the time of his death, intestate, on November 3, 2018, was unmarried and had sired no children.

8.     Lorraine and Leo Kubinski were both named as co-Personal Representatives of the Estate of Richard Paul Kubinski, and as such are able to maintain this suit[1]. *See*, **Composite Exhibit "B"**.

### Defendants

9.     At all times material to this action, Richard was an inmate in the custody of the Volusia County Sheriff's Office (hereinafter, "VCSO"), Volusia County Correctional Facility (hereinafter, "VCCF"), VCBJ, FDOC, or the VCDOC. Richard was last housed at the Reception and Medical Center in Lake Butler, Florida, a state prison operated by the FDOC, as well as the Volusia County Branch Jail in Daytona Beach, Florida, a county jail operated by the VCDOC.

10.    Defendant Joseph Edwards ("Edwards"), at all times material to this action, was employed by the FDOC as the warden of the FDOC's RMC state prison. At all times material to this action, Edwards was responsible for the administration, management, control, monitoring, and day-to-day functioning of the RMC. These responsibilities include, inter alia, providing for the custody, feeding, housing, rehabilitation, discipline, and medical care of the inmates in his charge. Defendant Edwards is sued in his official capacity.

11.    Defendant Rodney Prince (hereinafter, "Prince"), at all times material to this action, was employed by the VCDOC as the warden of the VCBJ and the VCCF. At all times material to

---

[1] Notably, although this occurred after the filing of the initial Complaint, Florida law allows for relation back to the date of filing:

> The Court went on to find that where the letters of administration are issued after the expiration of the statute of limitations, an amended complaint correcting the allegations of the complaint with respect to plaintiff's capacity to sue will relate back to the date of the filing of the complaint and the action will be deemed commenced within the time limited by statute.

Bermudez v. Florida Power & Light Co., 433 So. 2d 565, 566 (Fla. 3d DCA 1983) (*citing* Griffin v. Workman, 73 So. 2d 844, 847 (Fla. 1954)); *see also*, Markland v. Insys Therapeutics, Inc., 270 F. Supp. 3d 1318, 1324 (M.D. Fla. 2017), aff'd, 758 Fed. Appx. 777 (11th Cir. 2018).

this action, Prince was responsible for the administration, management, control, monitoring, and day-to-day functioning of the VCBJ. These responsibilities include, inter alia, providing for the custody, feeding, housing, rehabilitation, discipline, and medical care of the inmates in his charge. Defendant Prince is sued in his individual and official capacity.

12.     Defendant Mark Flowers (hereinafter, "Flowers"), at all times material to this action, was employed by the VCDOC as the Corrections Director. At all times material to this action, Flowers, in coordination with Prince and the agents and employees of the VCDOC, was responsible for the custody, control, and care of the inmates in his charge, which includes those housed within the VCBJ and VCCF. Defendant Flowers is sued in his individual and official capacity.

13.     Defendant Michael Chitwood (hereinafter, "Chitwood"), at all times material to this action, was the Sheriff of Volusia County. At all times material to this action, Chitwood, in coordination with VCBJ, VCCF, and VCDOC, was responsible for the custody, control, and care of the detainees in his charge.

14.     Defendant Armor Correctional Health Services, Inc. (hereinafter, "Armor"), a private Florida for-profit corporation, was at all times material to this action, responsible for providing healthcare to inmates and detainees of the VCDOC facilities, including VCBJ and VCCF.

15.     Defendant FDOC is a public entity of the State of Florida, subject to suit pursuant to Florida's Wrongful Death Act, as codified in Florida Statutes §§ 768.16–768.26, *et seq*.

16.     Defendant VCDOC is a public entity of the County of Volusia, State of Florida, subject to suit pursuant to Florida's Wrongful Death Act, as codified in Florida Statutes §§ 768.16–768.26, *et seq*.

17.     Defendant RMC is a public entity of the State of Florida, subject to suit pursuant to Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.

18.     Defendant VCBJ is a public entity of the County of Volusia, State of Florida, subject to suit pursuant to Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.

19.     Defendant VCCF is a public entity of the County of Volusia, State of Florida, subject to suit pursuant to Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.

20.     Defendants John Does #1-10 , upon information and belief, were, at all times material to this action, the agents and employees of the FDOC working within the RMC state prison, including but not limited to, corrections officers, guards, and medical staff. These Defendants are sued in their individual capacity and identified as reasonably as possible given the records currently disclosed to the Plaintiffs, further herein.

21.     Defendants John Does #11-20 , upon information and belief, were, at all times material to this action, the agents and employees of the VCDOC working within the VCBJ and VCCF, including but not limited to, corrections officers, guards, and medical staff. These Defendants are sued in their individual capacity and identified as reasonably as possible given the records currently disclosed to the Plaintiffs, further herein.

22.     Plaintiffs have fully and timely complied with the notice requirements of Section 768.28 of the Florida Statutes.[2]

### Reservation to Name Additional Defendants

---

[2] Note: Pursuant to § 726.28(6)(d), Fla. Stat., "The statute of limitations for […] wrongful death actions is tolled for the period of time taken by the Department of Financial Services or the appropriate agency to deny the claim."

23.     In addition to the entities and individuals set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiffs, but respecting whom, Plaintiffs currently lack specific facts to permit Plaintiffs to name such person or persons and/or entity or entities as party defendants. By not naming such persons or entities at this time, Plaintiff is not waiving its right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION & VENUE

24.     This Court has jurisdiction over this matter under the following:

a.     28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

b.     28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and,

c.     28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege, or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

d.     28 U.S.C. § 1367(a), as this Court also has supplemental jurisdiction over Plaintiff's state law claims, specifically with respect to wrongful death claims.

25.     Plaintiffs' claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988,

which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

26.     Plaintiff's claims for relief are predicated, in part, on Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and 42 U.S.C. § 12205, which authorizes the award of attorneys' fees and costs to a prevailing plaintiff action brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

27.     Plaintiff's claims for relief are predicated, in part, on Section 504 of the Rehabilitation Act, and Section 505 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, which authorizes the award of attorneys' fees and costs to a prevailing Plaintiff in actions brought pursuant to Section 504 of the Rehabilitation Act.

28.     Plaintiffs' claims for relief are also predicated, in part, upon Florida's Wrongful Death Act, as codified in Florida Statutes §§ 768.16–768.26, *et seq*.

29.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### *Richard's History of Mental Illness & His Initial Arrest*

30.     Richard had a longstanding history of mental illness, having been diagnosed with bipolar disorder and schizophrenia when he was approximately 20 years old.

31.     The American Psychiatric Association (hereinafter, "APA") defines bipolar disorders as, "[B]rain disorders that cause changes in a person's mood, energy and ability to function."[3] The APA further explains that, "[p]eople with bipolar disorders have extreme and

---

[3] The American Psychiatric Association, "What Are Bipolar Disorders?" Online. https://www.psychiatry.org/patients-families/bipolar-disorders/what-are-bipolar-disorders

intense emotional states that occur at distinct times, called mood episodes. These mood episodes are categorized as manic, hypomanic or depressive."[4]

32.     In defining the hallmarks of a manic episode, the APA goes on to say that, "A manic episode is a period of at least one week when a person is very high spirited or irritable in an extreme way…"[5]

33.     Additionally, the APA defines schizophrenia as, "[a] chronic brain disorder that affects less than one percent of the U.S. population. When schizophrenia is active, symptoms can include delusions, hallucinations, disorganized speech, trouble with thinking and lack of motivation."[6]

34.     Further, the APA explains that, "[n]ot taking medications as prescribed, the use of alcohol or illicit drugs, and stressful situations tend to increase these symptoms."[7]

35.     On October 9, 2017, upon information and belief, Richard was not on the psychotropic medication he had been prescribed to treat his bipolar disorder and schizophrenia.

36.     Consequently, on October 9, 2017, Richard was arrested for aggravated assault (Volusia Case No. 2017 103051 CFDL) and placed in the Volusia County Branch Jail.

37.     In total, Richard was incarcerated at the VCBJ from October 9, 2017 to May 8, 2018, whereupon he was transferred to the FDOC's RMC state prison.

38.     Because of the lack of complete records from all of the facilities mentioned, some of the records will have to be supplemented through discovery, and the complete identities and specific actions of specific people will be described in more detail.

---

[4] Id.
[5] Id.
[6] The American Psychiatric Association, "What is Schizophrenia?" Online.
https://www.psychiatry.org/patients-families/schizophrenia/what-is-schizophrenia
[7] Id.

### *Richard's Initial Health Decline at Volusia County Branch Jail*

39.    Richard's time at the VCBJ was fraught with medical emergencies and numerous intermittent hospitalizations.

40.    On November 27, 2017, Plaintiff Lorraine Kubinski emailed Prince because she was concerned about him. Prince personally responded by email, stating:

> I can tell you he is doing well. He will be afforded the opportunity to use the phone to call you. Our health professionals will address his medical needs.

*See*, **Exhibit "F"**, p. 1.

41.    On December 27, 2017, Plaintiffs Lorraine and Leo Kubinski emailed Prince again, stating:

> We received a phone call yesterday from our son Richard P. Kubinski Tuesday the 26th. and he is telling us that he is NOT receiving his medication for bi polar, lithium, or has not seen a doctor about the pain he is in. Knowing our son and speaking with him on the phone we can tell he is not on his medication. Richard also told us he has a mass on his lung, always hungry and lost a lot of weight and in a lot of pain. Please advise.

**Ex. "F"**, p.2.

42.    Prince responded simply with, "Our medical professionals will follow up with this thanks." **Ex. "F"**, p.3.

43.    Armor provides the medical services for VCBJ.

44.    Mere days later, on December 31, 2017, Richard was found in his cell in severe gastrointestinal distress and "bleeding". *See*, **Exhibit "C"**, p.5.

45.    In a narrative account from the Volusia County EMS responders who transported Richard to Halifax Health Medical Center of Daytona Beach (hereinafter generally, "EMS responders"), Richard stated that he had, "general abdominal pain, bright red blood in his stool and bilateral leg numbness and pain, all for the last three days." **Ex. "C"**, p.2.

10

46.     The EMS responders also stated that they found him in his jail cell, "with coffee ground emesis on [the] floor." **Ex. "C"**, p. 5.

47.     "Coffee ground emesis is vomiting associated with upper GI bleeding." Harris-Steinhoff v. Astrue, 07-3143-CV-S-REL-SSA, 2008 WL 2789251, at *4, n. 6 (W.D. Mo. July 17, 2008).

48.     The EMS responders further noted that Richard "occasionally has outbursts of obvious pain", which he claimed, "has been constant since surgery" that had occurred approximately "2 weeks ago"[8] and has been having "coffee ground emesis since surgery and dark tar like diarrhea since surgery". **Ex. "C"**, p. 5.

49.     John Does (11-15) refer herein to: (a) the specific guards who were aware of Richard's open and obvious distress, caused by his clearly severe, life-threatening gastrointestinal issues, which was both communicated to these guards and prison officials and was also visibly apparent by the bloody vomit that was on the floor of his cell; and (b) the specific guards who facilitated his malnutrition by failing to properly ensure that he was receiving and ingesting a proper amount of food necessary to avoid severe malnutrition while in their care. These John Doe defendants will be easily identified once discovery yields complete and accurate records from the Defendants.[9]

50.     Per the EMS responders' report, the only thing he had been given for this issue by VCBJ was Ibuprofen.

---

[8] Notably, there is no record of where this surgery was performed or who performed it, in any of Richard's jail records that have been provided to the Plaintiff.
[9] The Eleventh Circuit has recognized a limited exception to the fictitious defendants rule when the plaintiff's description of the relevant defendant is sufficiently specific as to be put the defendants on notice as to who is being referenced. Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). Given that the Defendants have access to records that identify these fictitious defendants, and that these records have not been made available to the Plaintiffs, the Plaintiffs argue that this meets the threshold identified in Richardson.

51.     John Does (16-20) refer herein to the specific employees of either the VCBJ or its contractors who: (a) determined that Richard's clearly severe, life-threatening gastrointestinal issues did not require intervention apart from prescribing Ibuprofen, which is known to exacerbate gastrointestinal ulcers and other issues; and (b) the specific employees who facilitated his malnutrition by failing to properly ensure that he was receiving and ingesting a proper amount of food necessary to avoid severe malnutrition while in their care. These John Doe defendants will be easily identified once discovery yields complete and accurate records from the Defendants.

52.     However, it is well accepted in the medical community that Ibuprofen and other NSAID medications should not be administered to people with "coffee-ground looking vomit", as that indicates, "possible gastrointestinal bleeding, for which Ibuprofen is contraindicated" and can exacerbate the bleeding. Thornhill for Estate of Berry v. Aylor, 3:15CV00024, 2017 WL 4685986, at *6 (W.D. Va. Oct. 18, 2017); *see also*, Fitzgerald v. Greer, 324 Fed. Appx. 510, 515 (7th Cir. 2009) ("What might have been a closer question is whether Drs. Kaplan and Lemke should have been treating Fitzgerald with Ibuprofen, a drug that can aggravate gastrointestinal problems, if he was suffering from stomach ulcers.").

53.     Given that Richard had apparently been previously hospitalized for such gastrointestinal bleeding only a few months prior, there is simply no excuse for VCBJ to be giving him Ibuprofen.

54.     Finally, the EMS responders stated that he "[spit] up a small amount of dark coffee ground emesis enroute". **Ex. "C"**, p. 5.

55.     On January 22, 2018, Plaintiffs Leo and Lorraine Kubinski again communicated their concerns to Prince, who responded simply that, "I will disseminate your concern to our medical & mental health professionals." **Ex. "F"**, p.3.

56.     On February 12, 2018, Plaintiffs Leo and Lorraine Kubinski contacted Flowers and

Prince, stating that:

> We are very concerned about your medical facility at the jail and our sons'
> care and report written by the National Center on Institutions and
> Alternatives. As per our phone call about Richard being in the hospital for
> three weeks and almost died. He was returned back to the jail without us
> knowing what was going on and we found out yesterday from Richard that
> he still has the tubes in his stomach. He has not been sent back to the doctor
> to check on any infection or when the tubes will be removed.
>
> Yesterday I called the medical dept. and Mr. Rodney Prince in regards to
> the above and got their voice mail. And as of today, Fev. 9, 2018 they have
> not returned my calls.
>
> Richard signed the waivers for us to be able to get the information. Please
> advise.

See, **Exhibit "G"**, pp.2-3.

57.     On February 12, 2018, Plaintiffs Leo and Lorraine Kubinski again contacted

Flowers, Mark Miller with Armor, and Public Defender Kurey, stating:

> I have been trying to get in touch with the medical facility at the jail and
> Mr. Prince and the only I get is the voice mail and no return calls. The
> reason for my calls was to find out the health condition of Richard and I just found
> out last week that Richard has tubes inserted in him from the time he was in
> the hospital for three weeks after he had been incarcerated already. I was
> informed that he almost died. Richard told me at this time no doctor has
> followed up to see when the tubes were going to be removed and he may
> also have an infection and nobody seems to care.
>
> Can you please find out what the name of the hospital he was at so I can
> follow up on who did the surgery and why there hasn't been a follow up.
>
> I am so afraid after reading the newspaper, how many law suits there is
> against the medical department at the jail. In reading the report from NAMI
> I am scared he may die at the jail.

**Ex. "G"**, pp.1-2.

58.     The next time EMS responders were dispatched to VCBJ to transport Richard

occurred just three months later, on April 11, 2018, wherein they recorded that Richard had had

"coffee ground emesis" for at least a week, and sharp epigastric pain at a level of 8 out of 10. *See*,

**Exhibit "D"**, p.2.

### *Richard's Treatment at the FDOC's RMC and Memorial Hospital of Jacksonville*

59.     On May 8, 2018, Richard was transferred to the FDOC's RMC state prison.

60.     On May 11, 2018, FDOC records show that Dr. Ramon Bassa, Chief Medical

Officer of RMC, stated:

> Incidental Note: **Not authorized for Gastro consult at this time.** PCP must reevaluate patient and determine if he is presenting active gastro intestinal symptoms A) abdominal pain, B) nausea, C) vomits, D) rectal bleeding (hematochezia, melena) ECT.

*See*, **Exhibit "J"**, p. 13 (emphasis added)[10].

61.     On May 14, 2018, Plaintiffs Leo and Lorraine Kubinski contacted Randall L. Polk,

Assistant Warden of RMC (hereinafter, "Polk"), stating:

> When we saw [Richard's] recent photo on your web site we were shocked and couldn't believe what we were seeing in his health and big loss in weight. And now since the serious operation he had on his stomach he hasn't been in good health.

*See*, **Exhibit "H"**, pp.1-2.

62.     On May 14, 2018, Polk replied, stating that:

> Inmate Kubinski is currently assigned to our medical unit. He is receiving care for his medical concerns. We are a medical facility and have a full time contingent of medical staff to include Doctors, Surgeons and Specialty Physicians. I am not authorized to have access to or share individual medical information but **I can assure you that he receiving care for his medical issues and will not leave our facility if additional care is necessary**.

**Ex. "H"**, p.3 (emphasis added).

---

[10] Notably, many of the RMC's medical records are hand-written in difficult-to-decipher cursive and are essentially illegible.

63.    *Just three days later*, on May 17, 2018, he was admitted to Memorial Hospital of Jacksonville.

64.    On June 21, 2018, Jim O'Callaghan, PA, on behalf of attending physician Dr. Hernan R. Chang, described Richard as, "an emaciated cachetic appearing" man, who "likely has had malnutrition for quite some time, but time period is unknown." *See*, **Exhibit "E"** (hereinafter, the "O'Callaghan Report"), p. 1.

65.    The O'Callaghan Report also notes that Richard had:

a history of a bleeding perforated gastric ulcer approximately 6 months ago w/ subsequent treatment that included gastric surgery at another facility, that has led to an eventual intra-abdominal gastric fistula formation, followed by the development of an intra-abdominal abscess.

**Ex. "E"**, p. 1.

66.    The O'Callaghan Report continues, stating that:

[Richard] was found to have **severe, potential life-threatening medical abnormalities** that included gastrojejunostomy type anastomosis leak with the development of increased abscess formation that was subsequently drained by IR this hospitalization.

**Ex. "E"**, p. 1 (emphasis added).

67.    Furthermore:

[Richard] has **such severe protein calorie malnutrition at time of presentation, open surgical intervention would likely lead to significant wound dehiscence** based on opinion noted with chart note review. During this time as well, palliative Care has been involved in this gentleman's care considering his poor prognosis since presentation, and the family has requested a full CRT for Mr. Kubinski.

**Ex. "E"**, p. 1 (emphasis added).

68.    In addition, Dr. Renato Blanco stated that:

Palliative Care has been involved in this patient's care since 05/29/2018 considering this patient's presentation with **a very severe debilitated state with poor wound healing ability, severe malnutrition, and life-**

15

**threatening issues that includes the intra-abdominal abscess, bleeding gastric ulcer with prior perforation** at presentation. […] It appears that at the time of this patient's incarceration, the patient may likely have had the significant medical issues prior to this.

**Ex. "E"**, p. 9 (emphasis added).

69.     On August 13, 2018, after 57 days at Jacksonville Memorial Hospital, Richard returned to RMC. *See*, **Exhibit "I"**, p.1.

70.     On September 30, 2018, Plaintiffs Leo and Lorraine Kubinski were able to visit Richard at RMC but were "disturbed" at the care that they witnessed. *See*, **Exhibit "I"**, p. 6.

71.     Specifically, they communicated the following to Glenda Webb, who works for Centurion Health of Florida, which apparently is a contractor that provides medical care to FDOC inmates:

> It started with when they brought Richard in to the hallway in front of the Supervisors office, they wheeled him in roughly and Richard was yelling he was in pain because they kept bumping his bed into things and it was hurting him. Also, while we were there he kept saying he was in pain and started throwing up mucus. He told us he can't keep food or medicine down. I got very concerned and got very vocal with what was going on because he threw up bile all over himself and the nurses did nothing while they walked pass us as we were asking for something for him to throw up in and clean up the mess, the Supervisor did say he was trying to make himself throw up and didn't even stop to see all the mucus. He as putting his fingers in his mouth to bring up the remaining mucus that was caught in his throat.
>
> Witnesses to this [fiasco], the Supervisor herself, forgot her name, a Guard standing around was Mr. Flynn and Lt. Colon and another younger guard, didn't get his name and finally Nurse Ford came in and the only thing she wanted to know if we had authorization to see his medical records. We said yes, and then they ran around for the next hour looking for the authorization with the Supervisor.
>
> Richard said he wasn't getting his pain medication and when he got his Lithium and other medication he wasn't able to keep it down

**Ex. "I"**, p. 6.

72.     John Does (1-10) refer herein to the specific employees of either the VCBJ or its contractors who were involved in the denial of reasonable care to Richard as described in **Exhibit "I"**, such as the "Supervisor", the guards who refused to adequately care for Richard, even though he was in such poor health that he would die a few weeks later, "Mr. Flynn", "Lt. Colon", and "Nurse Ford". These John Doe defendants will be easily identified once discovery yields complete and accurate records from the Defendants.

73.     On November 3, 2018, Richard died at Memorial Hospital Jacksonville, and the cause of Richard's death was listed as, "complications of septic shock," and "abdominal abscess," secondary to the significant contributing conditions of "Zollinger-Ellison Syndrome" and "recurrent gastrointestinal hemorrhage". **Ex. "A"**.

## COUNT I

### U.S. CONSTITUTION - EIGHTH AMENDMENT

### DELIBERATE INDIFFERENCE TO RICHARD PAUL KUBINSKI'S SERIOUS MEDICAL NEEDS by Edwards, Prince, and Flowers. (**Monell**)

74.     Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as if fully set forth at length.

75.     Defendants Edwards, Prince, and Flowers's official and unofficial policies and customs encouraged, caused, allowed, and/or enabled Defendants Armor and John Does #1-10 to violate Richard Paul Kubinski's right not to be subjected to cruel and unusual punishment as secured to him under the Eighth Amendment to the Constitution of the United States of America. *See*, Monell v. Department of Social Services, 436 U.S. 658 (1978).

76.     These violations were of a type and character as to which any reasonable person would be aware.

77.     Defendants Edwards, Prince, and Flowers have not disciplined Defendants Armor and John Does #1-10 for their violations of Richard Paul Kubinski's constitutional rights and therefore has implicitly approved, ratified, or adopted, Armor and John Does #1-10's unconstitutional actions, yet Defendants Edwards, Prince, and Flowers are responsible for Defendants Armor and John Does #1-10's supervision, training, and discipline through its policy-making powers and personnel decisions.

78.     The risk of harm in failing to properly treat Richard Paul Kubinski was objectively serious, and Defendants Edwards, Prince, Flowers, Armor and John Does #1-10 consciously knew of but disregarded that serious risk of harm.

79.     Specifically, Defendants Prince and Flowers were personally notified of the serious risk of harm by the Plaintiffs, but they disregarded those risks and failed to act.

80.     Defendants Edwards and Armor had constructive knowledge of Richard's health issues and failed to act.

81.     Defendants Edwards, Prince, Flowers, Armor and John Does #1-10 further operated to violate Richard Paul Kubinski's civil rights as protected by The Civil Rights Act, 42 U.S.C. § 1983.

82.     Defendants Edwards, Prince, Flowers, Armor and John Does #1-10 have practiced a policy of violating individual civil rights in violation of 42 U.S.C. § 1983.

83.     These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

84.     Qualified immunity does not apply, as it is well-settled that deliberate indifference to serious medical needs of prisoners is an Eighth Amendment violation:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such

> a failure may actually produce physical "torture or a lingering death,", the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain,", proscribed by the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 103–04 (1976) (*quoting* Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)) (internal citations omitted).

85.     As part of FDOC and VCDOC's policies and procedures, Defendants Armor and John Does #1-10 were trained to carry out their duties in conjunction with the foregoing course of conduct either explicitly or implicitly.

86.     As a direct and proximate result of the unlawful conduct of Defendants Edwards, Prince, Flowers, Armor and John Does #1-10's, as aforesaid, Richard Paul Kubinski was deprived of his civil rights and ultimately, his life.

87.     The aforesaid acts of Defendants Edwards, Prince, Flowers, Armor and John Does #1-10 were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous and deliberate indifference to the health, safety, and civil rights of Richard Paul Kubinski, by reason of which the Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, on this, Count I, as a result of Defendants Edwards, Prince, Flowers, Armor's violations of the Eighth Amendment to the U.S. Constitution, which caused the tragic and untimely death of Richard Paul Kubinski, Plaintiffs, Lorraine and Leo Kubinski, as co-Personal

Representatives to the Estate of Richard Paul Kubinski, their son, on behalf of the Estate and individually, have sustained the following damages, and therefore seek same from Defendants Edwards, Prince, Flowers, and Armor:

A.  The Estate of Richard Paul Kubinski has sustained the following damages:

1.  Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

2.  Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a)); and

3.  Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, § 768.21(6)(a)).

B.  Lorraine Kubinski, as the mother of Richard Paul Kubinski, has sustained the following damages:

1.  Loss of support and services of her son (*See*, § 768.21(1));

2.  Mental pain and suffering from the date of Richard's death and continuing for the remainder of her life (*See*, § 768.21(4)).

C.  Leo Kubinski, as the father of Richard Paul Kubinski, has sustained the following damages:

1.  Loss of support and services of his son (*See*, § 768.21(1));

2.  Mental pain and suffering from the date of Richard's death and continuing for the remainder of his life (*See*, § 768.21(4)).

D.  The Estate of Richard Paul Kubinski and Lorraine & Leo Kubinski have also sustained hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other compensatory and hedonic damages suffered by Plaintiffs, and punitive damages; declare the actions of Defendants Edwards, Prince, and Flowers complained herein to be in violation of 42 U.S.C. § 1983, and therefore also award Plaintiffs' attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988; and grant such other and further relief as this Court deems just and equitable.

## COUNT II

**U.S. CONST. - FOURTEENTH AMENDMENT**

**DELIBERATE INDIFFERENCE TO RICHARD PAUL KUBINSKI'S SERIOUS MEDICAL NEEDS by Chitwood. (Monell)**

88.     Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as if fully set forth at length.

89.     Defendant Chitwood's official and unofficial policies and customs encouraged, caused, allowed, and/or enabled John Does #11-20 to violate Richard Paul Kubinski's right not to be subjected to cruel and unusual punishment as secured to him under the Fourteenth Amendment to the Constitution of the United States of America. *See*, Monell v. Department of Social Services, 436 U.S. 658 (1978).

90.     The Fourteenth Amendment Due Process Clause governs pretrial detainees, but "the standards under the Fourteenth Amendment are identical to those under the Eighth." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

91.     These violations were of a type and character as to which any reasonable person would be aware.

21

92.     Defendant Chitwood has not disciplined Defendants John Does #11-20 for their violations of Richard Paul Kubinski's constitutional rights and therefore has implicitly approved, ratified, or adopted, John Does #11-20's unconstitutional actions, yet Defendant Chitwood is responsible for Defendant John Does #11-20's supervision, training, and discipline through its policy-making powers and personnel decisions.

93.     The risk of harm in failing to properly treat Richard Paul Kubinski was objectively serious, and Defendants Chitwood and John Does #11-20 consciously knew of but disregarded that serious risk of harm.

94.     Defendant Chitwood had constructive knowledge of Richard's health issues and failed to act.

95.     Defendants Chitwood and John Does #11-20's actions further operated to violate Richard Paul Kubinski's civil rights as protected by The Civil Rights Act, 42 U.S.C. § 1983.

96.     Defendants Chitwood and John Does #11-20 have practiced a policy of violating individual civil rights in violation of 42 U.S.C. § 1983.

97.     These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

98.     Qualified immunity does not apply, as it is well-settled that deliberate indifference to serious medical needs of prisoners is an Eighth Amendment violation:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death,", the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain,", proscribed by the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 103–04 (1976) (*quoting* Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)) (internal citations omitted).

99.     As part of FDOC and VCDOC's policies and procedures, Defendants John Does #11-20 were trained to carry out their duties in conjunction with the foregoing course of conduct either explicitly or implicitly.

100.     As a direct and proximate result of the unlawful conduct of Defendants Chitwood and John Does #11-20, as aforesaid, Richard Paul Kubinski was deprived of his civil rights and ultimately, his life.

101.     The aforesaid acts of Defendants Chitwood and John Does #11-20 were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous and deliberate indifference to the health, safety, and civil rights of Richard Paul Kubinski, by reason of which the Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, on this, Count II, as a result of Defendant Chitwood's violations of the Fourteenth Amendment to the U.S. Constitution, which caused the tragic and untimely death of Richard Paul Kubinski, Plaintiffs, Lorraine and Leo Kubinski, as co-Personal Representatives to the Estate of Richard Paul Kubinski, their son, on behalf of the Estate and individually, have sustained the following damages, and therefore seek same from Defendant Chitwood:

A.  The Estate of Richard Paul Kubinski has sustained the following damages:

    1.   Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

    2.   Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a)); and

    3.   Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, § 768.21(6)(a)).

B.    Lorraine Kubinski, as the mother of Richard Paul Kubinski, has sustained the following damages:

    1.   Loss of support and services of her son (*See*, § 768.21(1));

    2.   Mental pain and suffering from the date of Richard's death and continuing for the remainder of her life (*See*, § 768.21(4)).

C.    Leo Kubinski, as the father of Richard Paul Kubinski, has sustained the following damages:

    1.   Loss of support and services of his son (*See*, § 768.21(1));

    2.   Mental pain and suffering from the date of Richard's death and continuing for the remainder of his life (*See*, § 768.21(4)).

D.    The Estate of Richard Paul Kubinski and Lorraine & Leo Kubinski have also sustained hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other compensatory and hedonic damages suffered by Plaintiffs, and punitive damages; declare the actions of Defendant Chitwood complained herein to be in violation of 42 U.S.C. § 1983, and therefore also award Plaintiffs' attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988; and grant such other and further relief as this Court deems just and equitable.

## COUNT III

### U.S. CONSTITUTION - EIGHTH AMENDMENT

**DELIBERATE INDIFFERENCE TO RICHARD PAUL KUBINSKI'S SERIOUS MEDICAL NEEDS by Armor and John Does #1-10.**

102.    Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as if fully set forth at length.

103.    Defendants Armor and John Does #1-10 violated Richard Paul Kubinski's right not to be subjected to cruel and unusual punishment as secured to him under the Eighth Amendment to the Constitution of the United States of America.

104.    These violations were of a type and character as to which any reasonable person would be aware.

105.    The risk of harm in failing to properly treat Richard Paul Kubinski was objectively serious, and Defendants Armor and John Does #1-10 consciously knew of but disregarded that serious risk of harm.

106.    Defendants Armor and John Does #1-10 further operated to violate Richard Paul Kubinski's civil rights as protected by The Civil Rights Act, 42 U.S.C. § 1983.

107.    These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

108.    Qualified immunity does not apply, as it is well-settled that deliberate indifference to serious medical needs of prisoners is an Eighth Amendment violation:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death,", the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction

> of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain,", proscribed by the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 103–04 (1976) (*quoting* Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)) (internal citations omitted).

109.   As a direct and proximate result of the unlawful conduct of Defendants Armor and John Does #1-10's, as aforesaid, Richard Paul Kubinski was deprived of his civil rights and ultimately, his life.

110.   The aforesaid acts of Defendants Armor and John Does #1-10 were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous and deliberate indifference to the health, safety, and civil rights of Richard Paul Kubinski, by reason of which the Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, on this, Count III, as a result of Defendants Armor and John Does #1-10's violations of the Eighth Amendment to the U.S. Constitution, which caused the tragic and untimely death of Richard Paul Kubinski, Plaintiffs, Lorraine and Leo Kubinski, as co-Personal Representatives to the Estate of Richard Paul Kubinski, their son, on behalf of the Estate and individually, have sustained the following damages, and therefore seek same from Defendants Armor and John Does #1-10:

A.  The Estate of Richard Paul Kubinski has sustained the following damages:

1.  Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

26

2. Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a)); and

3. Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, § 768.21(6)(a).

B. Lorraine Kubinski, as the mother of Richard Paul Kubinski, has sustained the following damages:

1. Loss of support and services of her son (*See*, § 768.21(1));

2. Mental pain and suffering from the date of Richard's death and continuing for the remainder of her life (*See*, § 768.21(4)).

C. Leo Kubinski, as the father of Richard Paul Kubinski, has sustained the following damages:

1. Loss of support and services of his son (*See*, § 768.21(1));

2. Mental pain and suffering from the date of Richard's death and continuing for the remainder of his life (*See*, § 768.21(4)).

D. The Estate of Richard Paul Kubinski and Lorraine & Leo Kubinski have also sustained hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other compensatory and hedonic damages suffered by Plaintiffs, and punitive damages; declare the actions of Defendants Armor and John Does #1-10 complained herein to be in violation of 42 U.S.C. § 1983, and therefore also award Plaintiffs' attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988; and grant such other and further relief as this Court deems just and equitable.

## COUNT IV

## U.S. CONST. - FOURTEENTH AMENDMENT

### DELIBERATE INDIFFERENCE TO RICHARD PAUL KUBINSKI'S SERIOUS MEDICAL NEEDS by John Does #11-20

111.   Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as if fully set forth at length.

112.   Defendants John Does #11-20 violated Richard Paul Kubinski's right not to be subjected to cruel and unusual punishment as secured to him under the Eighth Amendment to the Constitution of the United States of America.

113.   The Fourteenth Amendment Due Process Clause governs pretrial detainees, but "the standards under the Fourteenth Amendment are identical to those under the Eighth." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

114.   These violations were of a type and character as to which any reasonable person would be aware.

115.   The risk of harm in failing to properly treat Richard Paul Kubinski was objectively serious, and Defendants Chitwood and John Does #11-20 consciously knew of but disregarded that serious risk of harm.

116.   Defendants John Does #11-20's actions further operated to violate Richard Paul Kubinski's civil rights as protected by The Civil Rights Act, 42 U.S.C. § 1983.

117.   Defendants Chitwood and John Does #11-20 have practiced a policy of violating individual civil rights in violation of 42 U.S.C. § 1983.

118.   These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

119.   Qualified immunity does not apply, as it is well-settled that deliberate indifference to serious medical needs of prisoners is an Eighth Amendment violation:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death,", the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain,", proscribed by the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 103–04 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)) (internal citations omitted).

120.    As part of FDOC and VCDOC's policies and procedures, Defendants John Does #11-20 were trained to carry out their duties in conjunction with the foregoing course of conduct either explicitly or implicitly.

121.    As a direct and proximate result of the unlawful conduct of Defendants John Does #11-20, as aforesaid, Richard Paul Kubinski was deprived of his civil rights and ultimately, his life.

122.    The aforesaid acts of Defendants John Does #11-20 were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous and deliberate indifference to the health, safety, and civil rights of Richard Paul Kubinski, by reason of which the Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, on this, Count IV, as a result of Defendants John Does #11-20 violations of the Fourteenth Amendment to the U.S. Constitution, which caused the tragic and untimely death of Richard Paul Kubinski, Plaintiffs, Lorraine and Leo Kubinski, as co-Personal Representatives to the Estate of Richard Paul Kubinski, their son, on behalf of the Estate and individually, have

sustained the following damages, and therefore seek same from Defendants Armor and John Does #11-20:

A.  The Estate of Richard Paul Kubinski has sustained the following damages:

1.  Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

2.  Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a)); and

3.  Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, § 768.21(6)(a)).

B.  Lorraine Kubinski, as the mother of Richard Paul Kubinski, has sustained the following damages:

1.  Loss of support and services of her son (*See*, § 768.21(1));

2.  Mental pain and suffering from the date of Richard's death and continuing for the remainder of her life (*See*, § 768.21(4)).

C.  Leo Kubinski, as the father of Richard Paul Kubinski, has sustained the following damages:

1.  Loss of support and services of his son (*See*, § 768.21(1));

2.  Mental pain and suffering from the date of Richard's death and continuing for the remainder of his life (*See*, § 768.21(4)).

D.  The Estate of Richard Paul Kubinski and Lorraine & Leo Kubinski have also sustained hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other compensatory and hedonic damages suffered by Plaintiffs, and punitive

damages; declare the actions of Defendant Armor and John Does #11-20 complained herein to be in violation of 42 U.S.C. § 1983, and therefore also award Plaintiffs' attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988; and grant such other and further relief as this Court deems just and equitable.

## COUNT V

### AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101 *et seq.*, TITLE II

### VIOLATIONS OF TITLE II OF THE ADA
### by RMC, VCBJ, and VCCF

123.    Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as if fully set forth at length.

124.    This, Count V, is a claim for disability discrimination against Defendants RMC, VCBJ, and VCCF for violating Title II (public entities) of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (hereinafter, the "ADA"), which provides in pertinent part at 42 U.S.C. § 12132:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

125.    Title II of the ADA prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and
- Subjecting a qualified individual to discrimination under any program or activity conducted by an agency.[11]

126.    Richard was disabled as defined at 42 U.S.C. § 12102(2), as he suffered both a mental impairment – bipolar disorder and schizophrenia – that substantially limited one or more

---

[11] 28 C.F.R. § 39.130

of his major life activities, including, but not limited to, concentrating, thinking, communicating, and perceiving; as well as a physical impairment – Zollinger-Ellison Syndrome (and its related sequelae) – that substantially limiting one or more of his major bodily functions, including, but not limited to, functions of the digestive system and bowel.

127.    Richard was a "qualified individual" as defined at 42 U.S.C. § 12131(2):

"Qualified Individual" means an individual with a disability who meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the entity (with or without regard to any auxiliary aids or modifications).

128.    Defendants RMC, VCBJ, and VCCF are public entities that have violated Title II of the ADA.

129.    The State of Florida's prison, RMC, is a facility and its operation comprises a program and service for the purposes of Title II of the ADA.

130.    Volusia County's jail facilities, VCBJ and VCCF, are facilities and their operations comprises programs and services for the purposes of Title II of the ADA.

131.    Defendants RMC, VCBJ, and VCCF authorized John Does #1-10 and John Does #11-20 , their agents and employees, to act for them when they committed the ADA violations alleged herein.

132.    Defendants RMC, VCBJ, and VCCF's agents and employees accepted the undertaking of acting on behalf of Defendants RMC, VCBJ, and VCCF when they committed the ADA violations alleged herein.

133.    Defendants RMC, VCBJ, and VCCF had control over their agents and employees when they committed the ADA violations alleged herein.

134.    The ADA violations alleged herein and committed by Defendants RMC, VCBJ, and VCCF and its agents and employees were done while acting within the course and scope of their employ and/or agency with the Defendant FDOC.

135.    Title II of the ADA applies to prisoners in state correctional facilities. <u>Wilson v. Smith</u>, 567 Fed. Appx. 676, 678 (11th Cir. 2014).

136.    Respondeat superior is available for claims based on Title II of the ADA. <u>T.W. ex rel. Wilson v. Sch. Bd. of Seminole County, Fla.</u>, 610 F.3d 588, 604 (11th Cir. 2010).

137.    Defendants RMC, VCBJ, and VCCF, its agents and employees, and John Does #1-10 and John Does #11-20 acted intentionally and/or with deliberate indifference to Richard's need for a reasonable accommodation by, among other things:

A.    Failing and intentionally refusing to establish policies and procedures whereby complaints of pain and/or medical need by inmates identified as having mental illness are not discredited by virtue of their psychiatric diagnoses, but are, instead, taken seriously, investigated, and appropriately treated, when such a policy and procedure was necessary to reasonably accommodate Richard's physical and mental disabilities;

B.    Failing and intentionally refusing to train Defendants RMC, VCBJ, and VCCF's employees regarding their obligation to provide physically or mentally disabled inmates with reasonable accommodations under the ADA;

C.    Failing and intentionally refusing to comply with Richard's particular plan of care as prescribed by his doctors in connection with his physical and mental disabilities;

D.      Failing and intentionally refusing to investigate what accommodations for Richard would have been reasonable; and

E.      Failing and intentionally refusing to reasonably accommodate Richard's physical and mental disabilities.

138.    In sum, Defendants RMC, VCBJ, and VCCF, their agents and employees, John Does #1-10 and John Does #11-20 through their collective failure to adequately consider and accommodate Richard's physical and mental disabilities, subjected him to a substantial risk of death that (1) was not faced by other inmates, and (2) could have been avoided by a reasonable accommodation.

139.    As a direct and proximate result of Defendants RMC, VCBJ, and VCCF, its employees, and agents' failure and intentional refusal to provide Richard with an accommodation for his physical and mental disabilities, he was caused to suffer a tragic and premature death on November 3, 2018.

WHEREFORE, on this, Count V, as a result of the tragic and premature death of Richard Paul Kubinski in violation of the Americans with Disabilities Act, Plaintiffs, Lorraine and Leo Kubinski, as co-Personal Representatives to the Estate of Richard Paul Kubinski, their son, on behalf of the Estate and individually, have sustained the following damages, and therefore seek same from Defendants RMC, VCBJ, and VCCF:

A. The Estate of Richard Paul Kubinski has sustained the following damages:

1. Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

2. Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a)); and

    3.  Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, §
768.21(6)(a)).

B.    Lorraine Kubinski, as the mother of Richard Paul Kubinski, has sustained the
following damages:

    1.  Loss of support and services of her son (*See*, § 768.21(1));

    2.  Mental pain and suffering from the date of Richard's death and continuing for
the remainder of her life (*See*, § 768.21(4)).

C.    Leo Kubinski, as the father of Richard Paul Kubinski, has sustained the following
damages:

    1.  Loss of support and services of his son (*See*, § 768.21(1));

    2.  Mental pain and suffering from the date of Richard's death and continuing for
the remainder of his life (*See*, § 768.21(4)).

D.    The Estate of Richard Paul Kubinski and Lorraine & Leo Kubinski have also
sustained hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned
damages, any and all other compensatory and hedonic damages suffered by Plaintiffs; declare the
actions of Defendants RMC, VCBJ, and VCCF complained herein to be in violation of Title II of
the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and therefore also award Plaintiffs'
attorneys' fees and costs in this action pursuant to 42 U.S.C. § 12205; and grant such other and
further relief as this Court deems just and equitable.

## COUNT VI

**FLORIDA WRONGFUL DEATH ACT**
**FLORIDA STATUTES §§ 768.16-768.26**

**WRONGFUL DEATH**

**against FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20**

140.    Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as if fully set forth at length.

141.    Plaintiffs' claim for relief on this, Count VI, is predicated upon Florida Statutes §§ 768.16-768.26, otherwise known as the "Florida Wrongful Death Act", and brought by Plaintiffs as the duly appointed, qualified, and acting personal representatives of the Estate of Richard Paul Kubinski.

142.    Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 are not entitled to sovereign immunity, because the actions and inactions of Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 constitute deliberate indifference and/or recklessness and violations of the Eighth and Fourteenth Amendments.

143.    Based upon the facts incorporated by reference herein, Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 were negligent in their care and custody of Richard Paul Kubinski.

144.    The Plaintiffs further allege that based upon the facts incorporated by reference herein, that Defendants, John Does #1-10 and John Does #11-20, sued in their individual capacities, acted in bad faith and/or a willful disregard of duty.

145.    As a result, Richard Paul Kubinski suffered bodily injury and resulting pain and suffering that caused his death.

146.    The Plaintiffs, the surviving parents of Richard Paul Kubinski, sustained mental pain and anguish due to the untimely, unnecessary, and completely preventable death of Richard Paul Kubinski, and the specific manner upon which pain and cruelty was inflicted upon him.

147.    Parents of an adult child may seek recovery for mental pain and suffering in accordance with § 768.21(4), Fla. Stat.

148.    All conditions precedent have been satisfied or they have otherwise been waived. All statutory notices have been given in a timely manner.

149.    At all times material to this action, Defendant VCDOC employed Defendants Rodney Prince, Mark Flowers, Armor, and John Does #11-20 as agents and/or employees. All actions performed by Rodney Prince, Mark Flowers, Armor, and John Does #11-20 were under color of state law and constitute state action.

150.    At all times material to this action, Defendant FDOC employed or contracted with Defendants John Does #1-10 as agents and/or employees.

151.    At all times material to this action, Defendant VCDOC employed or contracted with Defendants John Does #11-20 as agents and/or employees.

152.    All actions performed by Defendants John Does #1-10 and John Does #11-20 were done under color of state law and constitute state action.

153.    The Defendants, and their agents and employees, each owed a non-delegable, legal duty to Richard Paul Kubinski, to use reasonable care in attending to his medical needs, in that he was in their custody and care during the entirety of the period leading up to his death, and unable to attend to those needs himself.

154.    Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20, their agents, and employees breached those duties.

155.    The legal and proximate cause of Richard Paul Kubinski's death was the breach of those duties.

156.    Consequently, the Plaintiffs have sustained damages as a result of Richard Paul Kubinski's untimely death.

WHEREFORE, on this, Count VI, as a result of Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20's negligent acts, which caused the tragic and untimely death of Richard Paul Kubinski, Plaintiffs, Lorraine and Leo Kubinski, as co-Personal Representatives to the Estate of Richard Paul Kubinski, their son, on behalf of the Estate and individually, have sustained the following damages, and therefore seek same from Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20:

A.  The Estate of Richard Paul Kubinski has sustained the following damages:

1.  Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

2.  Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a)); and

3.  Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, § 768.21(6)(a).

B.  Lorraine Kubinski, as the mother of Richard Paul Kubinski, has sustained the following damages:

1.  Loss of support and services of her son (*See*, § 768.21(1));

2.  Mental pain and suffering from the date of Richard's death and continuing for the remainder of her life (*See*, § 768.21(4)).

C.    Leo Kubinski, as the father of Richard Paul Kubinski, has sustained the following damages:

    1.   Loss of support and services of his son (*See*, § 768.21(1));

    2.   Mental pain and suffering from the date of Richard's death and continuing for the remainder of his life (*See*, § 768.21(4)).

D.    The Estate of Richard Paul Kubinski and Lorraine & Leo Kubinski have also sustained hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other economic or noneconomic damages suffered by Plaintiffs, and punitive damages, Plaintiffs' attorneys' fees and costs, and grant such other and further relief as this Court deems just and equitable.

## COUNT VII

**NEGLIGENCE**

**against FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20**

157.    Plaintiffs repeat and reallege paragraphs 1 through 73 of this Complaint as if fully set forth at length.

158.    Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 are not entitled to sovereign immunity, because the actions and inactions of Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 constitute deliberate indifference and/or recklessness and violations of the Eighth and Fourteenth Amendments.

159.    Based upon the facts incorporated by reference herein, Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 were negligent in their care and custody of Richard Paul Kubinski.

160.    The Plaintiffs further allege that based upon the facts incorporated by reference herein, that Defendants, John Does #1-10 and John Does #11-20, sued in their individual capacities, acted in bad faith and/or a willful disregard of duty.

161.    As a result, Richard Paul Kubinski suffered bodily injury and resulting pain and suffering that caused his death.

162.    The Plaintiffs, the surviving parents of Richard Paul Kubinski, sustained mental pain and anguish due to the untimely, unnecessary, and completely preventable death of Richard Paul Kubinski, and the specific manner upon which pain and cruelty was inflicted upon him.

163.    Parents of an adult child may seek recovery for mental pain and suffering in accordance with § 768.21(4), Fla. Stat.

164.    All conditions precedent have been satisfied or they have otherwise been waived. All statutory notices have been given in a timely manner.

165.    At all times material to this action, Defendant VCDOC employed Defendants Rodney Prince, Mark Flowers, Armor, and John Does #11-20 as agents and/or employees. All actions performed by Rodney Prince, Mark Flowers, Armor, and John Does #11-20 were under color of state law and constitute state action.

166.    At all times material to this action, Defendant FDOC employed Defendants John Does #1-10 as agents and/or employees.

167.    At all times material to this action, Defendant VCDOC employed Defendants John Does #11-20 as agents and/or employees.

168.    All actions performed by Defendants John Does #1-10 and John Does #11-20 were done under color of state law and constitute state action.

169.    The Defendants, and their agents and employees, each owed a non-delegable, legal duty to Richard Paul Kubinski, to use reasonable care in attending to his medical needs, in that he was in their custody and care during the entirety of the period leading up to his death, and unable to attend to those needs himself.

170.    Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20, their agents, and employees breached those duties.

171.    The legal and proximate cause of Richard Paul Kubinski's death was the breach of those duties.

172.    Consequently, the Plaintiffs have sustained damages as a result of Richard Paul Kubinski's untimely death.

WHEREFORE, on this, Count VII, as a result of Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20's negligent acts, which caused the tragic and untimely death of Richard Paul Kubinski, Plaintiffs, Lorraine and Leo Kubinski, as co-Personal Representatives to the Estate of Richard Paul Kubinski, their son, on behalf of the Estate and individually, have sustained the following damages, and therefore seek same from Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20:

A.  The Estate of Richard Paul Kubinski has sustained the following damages:

1.  Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

41

2. Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a)); and

3. Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, § 768.21(6)(a).

B. Lorraine Kubinski, as the mother of Richard Paul Kubinski, has sustained the following damages:

1. Loss of support and services of her son (*See*, § 768.21(1));

2. Mental pain and suffering from the date of Richard's death and continuing for the remainder of her life (*See*, § 768.21(4)).

C. Leo Kubinski, as the father of Richard Paul Kubinski, has sustained the following damages:

1. Loss of support and services of his son (*See*, § 768.21(1));

2. Mental pain and suffering from the date of Richard's death and continuing for the remainder of his life (*See*, § 768.21(4)).

D. The Estate of Richard Paul Kubinski and Lorraine & Leo Kubinski have also sustained hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other economic or noneconomic damages suffered by Plaintiffs, and punitive damages, Plaintiffs' attorneys' fees and costs, and grant such other and further relief as this Court deems just and equitable.

## COUNT VIII

**SURVIVAL**

**against FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20**

173.   Plaintiff, the Estate of Richard Paul Kubinski, repeats and realleges paragraphs 1 through 73 of this Complaint as if fully set forth at length.

174.   Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 are not entitled to sovereign immunity, because the actions and inactions of Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 constitute deliberate indifference and/or recklessness and violations of the Eighth and Fourteenth Amendments.

175.   Based upon the facts incorporated by reference herein, Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20 were negligent in their care and custody of Richard Paul Kubinski.

176.   The Plaintiffs further allege that based upon the facts incorporated by reference herein, that Defendants, John Does #1-10 and John Does #11-20, sued in their individual capacities, acted in bad faith and/or a willful disregard of duty.

177.   As a result, Richard Paul Kubinski suffered bodily injury and resulting pain and suffering that caused his death.

178.   All conditions precedent have been satisfied or they have otherwise been waived. All statutory notices have been given in a timely manner.

179.   At all times material to this action, Defendant VCDOC employed Defendants Rodney Prince, Mark Flowers, Armor, and John Does #11-20 as agents and/or employees. All actions performed by Rodney Prince, Mark Flowers, Armor, and John Does #11-20 were under color of state law and constitute state action.

180.   At all times material to this action, Defendant FDOC employed Defendants John Does #1-10 as agents and/or employees.

181.    At all times material to this action, Defendant VCDOC employed Defendants John Does #11-20 as agents and/or employees.

182.    All actions performed by Defendants John Does #1-10 and John Does #11-20 were done under color of state law and constitute state action.

183.    The Defendants, and their agents and employees, each owed a non-delegable, legal duty to Richard Paul Kubinski, to use reasonable care in attending to his medical needs, in that he was in their custody and care during the entirety of the period leading up to his death, and unable to attend to those needs himself.

184.    Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20, their agents, and employees breached those duties.

185.    The legal and proximate cause of Richard Paul Kubinski's death was the breach of those duties.

186.    Had Richard Paul Kubinski survived this tragedy, he would have had claims for pain and suffering, medical expenses, and other such damages as a result of the actions and inactions of Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20.

187.    Consequently, because Richard Paul Kubinski slowly died a completely preventable death, and was in excruciating pain throughout that period, Richard Paul Kubinski suffered physical injury and damage, mental terror, distress, and pain prior to death.

WHEREFORE, on this, Count VIII, as a result of Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20's acts and omissions, which caused the tragic and untimely death of Richard Paul Kubinski, the Estate of Richard Paul

Kubinski has sustained the following damages, and therefore seek same from Defendants, FDOC, VCDOC, Edwards, Prince, Flowers, Chitwood, Armor, John Does #1-10 and John Does #11-20:

    A.  The Estate of Richard Paul Kubinski has sustained the following damages:

        1.  Funeral and burial expenses incurred as a result of the death of Richard Paul Kubinski that have become a charge against his Estate or that were paid on his behalf (*See*, § 768.21(5));

        2.  Loss of prospective net Estate accumulations (*See*, § 768.21(6)(a));

        3.  Loss of earnings of Richard Paul Kubinski from the date of his death (*See*, § 768.21(6)(a)); and

        4.  Hedonic damages based on the decedent's loss of enjoyment of life.

In sum, Plaintiffs respectfully request that this Court award Plaintiffs the aforementioned damages, any and all other economic or noneconomic damages suffered by Plaintiffs, and punitive damages, Plaintiffs' attorneys' fees and costs, and grant such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,



Dated: <u>April 27, 2021</u>

ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
**LENTO LAW GROUP, P.A.**
222 San Marco Ave., Ste. "C"
St. Augustine, FL 32084
904.602.9400 x 467 (Office)
904.299.5400 (Fax)

reringer@lentolawgroup.com
*Attorney for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that this document was electronically served to all Defendants via ECF to their counsels of record on April 27, 2021.

Respectfully Submitted,

ROOK ELIZABETH RINGER, ESQ.
**LENTO LAW GROUP, P.A.**