UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LORRAINE and LEO KUBINSKI,
as co-personal representatives to the
ESTATE OF RICHARD PAUL
KUBINSKI, on behalf of the Estate
and individually,

    Plaintiffs,

v.    CASE NO. 3:21-cv-34-HES-MCR

JOSEPH EDWARDS, in his official
capacity as Warden of the Florida
Department of Correction Lake Butler
Reception and Medical Center, et. al.,

    Defendants.
_____/

# ORDER

This matter is before this Court on Armor Correctional Health Services, Inc. ("Armor") and County of Volusia's Motion for Summary Judgment and Memorandum of Law (Dkt. 85); Defendant Florida Department of Corrections' ("FDOC") Motion for Summary Judgment (Dkt. 97), Plaintiffs' responses (Dkts. 112 and 113), Defendant FDOC's Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment (Dkt. 114); and Armor and County of Volusia's Reply to Plaintiffs' Response to Motion for Summary Judgment (Dkt. 115).

## Background

This case involves the medical care provided to Richard Kubinski ("Kubinski") while he was incarcerated. Kubinski was arrested on October 9, 2017, and he was incarcerated at Volusia County Branch Jail ("VCBJ"). The health care at VCBJ was provided by Defendant Armor.

On May 8, 2018, Kubinski was transferred to the FDOC. He was an inmate in FDOC's custody at the Reception and Medical Center ("RMC") until his death on November 3, 2018, at Jacksonville Memorial Hospital ("JMH"). The Associate Medical Examiner for Duval County listed Kubinski's cause of death as "Natural," arising from "complications of Septic Shock due to Abdominal Abscess," with contributory causes of Zollinger-Ellison Syndrome and "Recurrent Gastrointestinal Hemorrhage."

When Kubinski arrived on May 8, 2018, RMC's medical staff were employees of Centurion of Florida ("Centurion"), a private company providing medical care to FDOC inmates. Centurion provided Kubinski's care for the totality of his incarceration at RMC.[1] Kubinski received prompt medical attention from Centurion for the issues he was already experiencing when he arrived at FDOC. Until his death, Kubinski's subsequent treatment occurred

---

[1] Centurion was not named as a defendant.

2

at either RMC's accredited hospital or JMH.

The operative Second Amended Complaint contains these active counts: Count I, a claim Defendants violated Kubinski's Eighth Amendment rights through deliberate indifference to his medical needs; Count II, a claim Defendants violated Kubinski's Fourteenth Amendment rights through deliberate indifference to his medical needs; Count III, a claim Defendant Armor violated Kubinski's Eighth Amendment rights through deliberate indifference to his medical needs; and Count V, violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, during Kubinski's incarceration with FDOC.[2]

**Standard of Review**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove

---

[2] In a March 2022 Order, this Court dismissed John Does 1-10, John Does 11-20, and Counts IV, Counts VI, VII, and VIII in the Second Amended Complaint. (Dkt. 78).

its case at trial." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the moving party does so, the nonmoving party "must come forward with evidence sufficient to withstand a directed verdict motion." *Id.*

The entry of summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, a court "'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch Cty. Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "'[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Hinson*, 231 F.3d at 827 (quoting *Reeves*, 530 U.S. at 151). "In other words, [the court] must consider the entire record, but 'disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Hinson*, 231 F.3d at 827 (quoting *Reeves*, 530 U.S.

4

at 151).

But the nonmoving party "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015).

Nor is hearsay permitted. The Eleventh Circuit has explained, "[t]he general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)).

**Discussion**

Kubinski's death was and remains tragic. But a death alone does not make a legitimate civil lawsuit. To prevail in a civil lawsuit, allegations require supporting facts. The allegations, or claims, are first made in the complaint. But those claims cannot stand alone, they must be proven. A plaintiff who merely relies on allegations will fail.

More must be done to prove the allegations. This can begin in the

5

discovery phase of the case—where the parties exchange and produce documents, answer interrogatories, and take witness depositions. After this intentionally rigorous process allegations may move to factual assertions to support or oppose in a motion for summary judgment. In other words, allegations must be supported by facts which can be revealed in the discovery process to withstand a motion for summary judgment.

After the initial and discovery stages, the parties may get an opportunity to make arguments to a judge or jury. But throughout the process—to prevail—a case must remain active and vital. Lawyers shepherd litigants through the entire progression of a case.

But there appears to have been no effective shepherding here—at least not on Plaintiffs' behalf. Plaintiffs made the allegations but have failed to buttress those allegations with facts. Plaintiffs propounded no discovery nor set any depositions. Plaintiffs have also provided no expert witnesses or expert witness reports.

Then Defendants filed motions for summary judgment. Plaintiffs responded. But those responses were stricken because they lacked any record citations. (Dkt. 106). *See* Fed. R. Civ. P. 56(c). This Court explained it would "not be lured into a fishing expedition while deciding the pending summary

judgment motions." (Dkt. 106).

Plaintiffs refiled their responses, but many of the same issues persisted. The responses are little more than recycled pleadings with a few record citations. Plaintiffs copied many of their conclusory and unsupported statements from their original response. Plaintiffs also conflated the parties in some of their allegations.

Finally, every record citation in the recycled original response refers to "the Complaint," yet the operative pleading is the Second Amended Complaint.

There is, however, an interesting exception to the lack of citation. In the response to the FDOC's motion, Plaintiffs cite the "Mediation testimony of Leo Kubinski, August 1, 2022." (Dkt. 113, pg. 13). But Plaintiffs cannot rely on anything from a confidential mediation.[3]

In sum, Plaintiffs submitted no "specific facts showing there is a genuine issue for trial. *Walker*, 911 F.2d at 1577. Plaintiffs' "conclusory allegations and speculation" cannot defeat a motion for summary judgment.

---

[3] The Order setting the terms of the mediation in this case is clear—the substance of the mediation was confidential. (Dkt. 62). The Order was explicit, "No party, lawyer, or other participant is bound by, may record, or without the judge's approval may disclose any event, including any statement confirming or denying a fact–except settlement—that occurs during the mediation." *Id.*

*Valderrama*, 780 F.3d at 1112. This cannot and will not defeat summary judgment.

These global observations aside, this Court will also specifically address each of the remaining counts from the Second Amended Complaint.

**Count I**

Plaintiffs allege Defendants violated Kubinski's Eighth Amendment rights through deliberate indifference to his medical needs. Yet when Kubinski was under the care and custody of Defendants the County of Volusia and Armor, he was a pretrial detainee, not a convicted inmate. It is the Fourteenth Amendment, not the Eighth Amendment, that governs the medical care of pretrial detainees. *See Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) ("The Fourteenth Amendment requires government officials to provide basic necessities, including medical care, to pretrial detainees."). A deliberate indifference claim for a pretrial detainee must be brought through the Fourteenth Amendment. *See Nasseri v. City of Athens*, 373 Fed. App'x. 15, 19 (11th Cir. 2010) ("Pretrial detainees are afforded the same protections as prisoners, except that a pretrial detainee brings a deliberate indifference claim via the Fourteenth Amendment."). Defendants are therefore entitled to summary judgment on this count.

If Plaintiffs are asserting a cause of action under 42 U.S.C. § 1983 against Defendant FDOC that action must too fail. "To establish a claim under § 1983, a plaintiff must show that he 'was deprived of a federal right by a person acting under color of state law.'" *Gardner v. Riska*, 444 F. App'x 353, 355 (11th Cir. 2011) (quoting *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir.2001)). State agencies do not qualify as "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). The Eleventh Circuit is also clear, "'A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable.'" *Gardner*, 444 F. App'x at 355 (quoting *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir.1995)).

The FDOC is a state agency, and not a person within the meaning of § 1983, and the motion for summary judgment must be granted as to Count I.

**Counts II and III**

Counts II and III are claims Defendants violated Kubinski's Eighth and Fourteen Amendment rights through deliberate indifference to his medical needs.

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Goodman*

*v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). For a plaintiff to withstand a motion for summary judgment in a deliberate indifference case, that "plaintiff must 'produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Goodman*, 718 F.3d at 1331 (11th Cir. 2013) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)).

There are two necessary parts of a deliberate indifference claim—"an objectively serious medical need, and subjective deliberate indifference to that need." *Hannah v. Armor Corr. Health Servs. Inc.*, 792 F. App'x 742, 744 (11th Cir. 2009).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Calhoun v. Volusia Cnty.*, 499 F. Supp. 2d 1299, 1309 (M.D. Fla. 2007) (internal quotation omitted). The obvious medical need "must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

"To establish the second element, deliberate indifference to the serious medical need, the prisoner must prove three facts: (1) subjective knowledge of

a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). But the Supreme Court has cautioned, mere negligence or medical malpractice does not satisfy the standard. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (teaching "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Where, as here, a plaintiff was provided medical care, or he refused medical care, courts hesitate to find the medical care amounted to deliberate indifference because it is assumed the physician provided care based on medical judgment. *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567 (11th Cir. 1985); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (explaining, "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Plaintiffs argue Kubinski had serious medical needs during his incarceration—all the parties agree. Yet the record is full of Kubinski's medical records—all submitted by Defendants. No admissible, record

11

evidence suggests any of employees, of Armor, or any other entity, at any time deliberately ignored Kubinski's medical needs with the intent to inflict pain or prolong any suffering as required to support this claim. At most, and only when viewed with a predetermined result in mind, Plaintiffs' claim is Kubinski's treatment constituted substandard medical care, not deliberate indifference to his serious medical needs.

Plaintiffs also lacked affirmative evidence showing Defendants had a policy or custom of deliberate indifference to those needs which caused his injury. An individual inmate's declining health and death does not establish that the jail or its medical provider had a custom or policy of deliberate indifference.

The Eleventh Circuit has repeatedly cautioned, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds* by *Hope v. Pelzer*, 536 U.S. 730 (2002); *Owen v. Corizon Health Inc.*, 703 Fed. Appx. 844, 847 (11th Cir. 2017); *Jacoby v. Baldwin Cnty.*, 596 Fed. Appx. 757, 767 (11th Cir. 2014); *Est. of Hand by & through*

*Hand v. Fla. Dep't of Corr.*, No. 21-11542, 2023 WL 119426, at *7 (11th Cir. Jan. 6, 2023).

This Court has no special medical knowledge and cannot determine in on one sided argument if the medical care provided to Kubinski was sufficient or not. But what this Court can say is Defendant have satisfied their burden of producing evidence and testimony that Kubinski's medical needs were reviewed on a near daily basis. But no health care provider has criticized the medical care provided to Kubinski. And no health care provider has contended that his death was caused by delayed or inadequate medical care.

Plaintiffs offer little more than a *res ipsa loquitur* argument that does not apply to claims of deliberate indifference. *See Clark–Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir.2006) (citing *Sweeney v. Erving*, 228 U.S. 233 (1913); *see also Rascon v. Douglas*, 718 Fed. Appx. 587, 590 (10th Cir. 2017).

To the extent that Plaintiffs are attempting to hold the County of Volusia municipally liable, they have also failed. A municipality cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior. *See Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690-695 (1978). To impose § 1983 liability on a municipality or county, a plaintiff must allege and be able to show that: (1) a constitutional right was violated;

(2) the municipality had a specific policy or custom that constituted deliberate indifference to that constitutional right; and (3) the policy or custom was a direct cause of the violation. *Connick v. Thompson*, 563 U.S. 51 (2011).

The Supreme Court is also clear, "under § 1983, local governments are responsible only for 'their own illegal acts'" and "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* In other words, the Supreme Court has explained there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385.

Plaintiffs failed to specifically identify any official promulgated policy or identify an unofficial custom or practice causing deliberate indifference. Therefore, Plaintiffs have not satisfied their burden and summary judgment must be granted on Counts II and III.

**Count V**

Plaintiffs allege violations of Title II of the ADA during Kubinski's incarceration with FDOC. Title II of the ADA, prohibits public entities from discrimination against disabled individuals, and it applies to prisoners in

state correctional facilities. To state a claim under Title II of the ADA, a plaintiff must allege: "(1) that he is a 'qualified individual with a disability'; (2) that he was 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity'; (3) 'by reason of such disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132).

The Eleventh Circuit has stated, "[t]he language of Title II generally tracks that of § 504 of the Rehabilitation Act. See 29 U.S.C. § 794(a)." *Wilson v. Smith*, 567 F. App'x 676, 678–79 (11th Cir. 2014). "In the context of the RA, we have held that 'a plaintiff may demonstrate discriminatory intent through a showing of deliberate indifference.'" *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir.2012). The Circuit emphasized, in the Rehabilitation Act context, deliberate indifference occurs "when the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Id.* at 344 (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 594 (11th Cir. 2010) (emphasis removed).

Plaintiffs have established no discriminatory intent or deliberate

indifference. Defendants are entitled to summary judgment on Count V.

In addition, to recover monetary damages under Title II of the ADA, Plaintiffs must prove :intentional discrimination" by the defendant. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference is the standard for intentional discrimination. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* Notably, "mere medical malpractice or a difference in medical opinion as to treatment or diagnosis does not constitute deliberate indifference." *Brennan v. Headley*, 807 F. App'x 927, 935 (11th Cir. 2020) (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

There is no admissible evidence that Plaintiffs have submitted of deliberate indifference in case by anyone, including the prison officials, so Defendants are entitled to summary judgment on Count V.

**Conclusion**

For the reasons outlined above, the motions for summary judgment will be granted.

Accordingly, it is **ORDERED**:

1. Armor and County of Volusia's Motion for Summary Judgment and

Memorandum of Law (Dkt. 85) and Defendant Florida Department of Corrections' Motion for Summary Judgment (Dkt. 97) are **GRANTED**; and

2. The Clerk will enter Judgment for Defendants and close this file.

**DONE AND ORDERED** at Jacksonville, Florida, this _15th_ day of February 2023.

_____
HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Nichelle Lynn Womble, Esq.
Natalia Marrero, Esq.
John Thomas Buchan, Esq.
Jeffrey S. Howell, Esq.